THOMPSON, Presiding Judge.
Windham Todd Pittman (“Windham”), Rhonda Pittman (“Rhonda”), and Jonathan Pittman (hereinafter referred to collectively as “the Pittmans”) appeal from a summary judgment entered in favor of Regions Bank, doing business as Regions Mortgage (“Regions”), in its ejectment action against the Pittmans. Specifically, Regions sought to recover possession of certain real property in Daleville (“the property’) that had been foreclosed upon and that was occupied by the Pittmans.
The evidentiary submissions the parties filed in support of and in opposition to Regions’ motion for a summary judgment indicate the following. Land Ventures for 2, LLC (“Land Ventures”)(which is not a party to this appeal), Windham, and Rhonda (hereinafter referred to collectively as “the borrowers”) obtained a $650,000 loan *194 from Access Mortgage Corporation (“Access”) to purchase the property. On April 15, 2008, Windham, both as the managing member of Land Ventures and in his individual capacity, and Rhonda executed a promissory note, which was secured by a mortgage on the property. The mortgage was executed only by Windham as the managing member of Land Ventures. On June 29, 2009, Windham, again both as the managing member of Land Ventures and in his individual capacity, executed a loan-modification agreement. That agreement was among Land Ventures as the borrower, Regions as the lender or mortgage servicer, and Mortgage Electronic Registration Systems, Inc. (“MERS”), solely as the nominee for the “lender and lender’s successors and assigns,” as the mortgagee. On May 7, 2010, MERS, acting solely as nominee for Access, assigned the mortgage and the note to Regions.
It is undisputed that the borrowers failed to make the required monthly payments. Steven Purser, a vice president of Regions who serves as the manager of the “Real Estate Owned” Department, testified in his affidavit that Regions last received a payment from the borrowers on August 5, 2011. That payment had been due in April 2010, Purser said.
Windham submitted three affidavits at different times to oppose Regions’ motion for a summary judgment. In his affidavits, Windham testified that he did not receive proper notice of the default and that was he was not given an opportunity to cure the default. He also stated that he was not provided with proper notice of intent to accelerate, proper notice of acceleration, or proper notice of the foreclosure sale, which, he says, was required by law and by the mortgage contract. Windham also listed a number of other items that he says he should have received before foreclosure was proper. No documents from Regions to the borrowers indicating Regions’ intent to accelerate the note or to foreclose on the property are contained in the record before us.
In an affidavit, Windham also estimated that the property had a market value of approximately $658,000. In at least one of his affidavits, Windham said that his opinion was based on his knowledge of the neighborhood and the house, the corresponding values of similar properties in the neighborhood, and recent sales of similar properties. Windham testified that the property included six separate parcels that he described as “distinct” and not contiguous. One of the parcels included the Pitt-mans’ residence.
In his affidavits, Windham stated that he had asked Regions to sell the property in separate parcels rather than en masse. Windham opined that the property would have sold for more money if the individual parcels making up the property had been sold separately. He also said that, had the parcels been sold separately, he “could have potentially redeemed just the parcel where my family’s home is located.” Regions refused his request, Windham said.
Regions began foreclosure proceedings on the property in 2012. After publication of the appropriate notices in a Geneva County newspaper, the foreclosure sale was held on March 7, 2013. Purser testified that Regions submitted the highest and best bid of $367,500 and that the property was sold to Regions pursuant to the power-of-sale clause contained in the mortgage. The foreclosure deed, dated March 7, 2013, is included in the record. We note that the foreclosure deed includes the six parcels discussed in Windham’s affidavits. On March 7, 2013, attorneys for Regions sent a letter to Land Ventures, in care of Windham, demanding that the property be vacated within ten days. The Pittmans did not vacate at least the parcel *195 on which their house was located, and Regions filed this ejectment action on October 28, 2014, seeking the Pittmans’ removal.
After a hearing on Regions’ motion for a summary judgment and after allowing the parties to file supplemental submissions, the trial court entered a summary judgment in favor of Regions on November 9, 2015. The Pittmans filed a timely motion to alter, amend, or vacate the judgment, which the trial court denied on January 14, 2016. The Pittmans appealed the judgment to the Alabama Supreme Court, which transferred the appeal to this court pursuant to § 12-2-7(6), Ala. Code 1975.
On appeal, as they did before the trial court, the Pittmans raise a number of challenges to the validity of the underlying foreclosure. They assert that, in their evi-dentiary submission in opposition to Regions’ motion, they raised a number of factual questions that Regions failed to refute with evidence of its own. Therefore, the Pittmans argue, the trial court erred in entering a summary judgment in favor of Regions.
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala. 2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala. 2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala. 1989).”
Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala. 2004).
Regions filed its ejectment action against the Pittmans pursuant to,. § 6-6-280, Ala. Code 1975. That statute provides, in pertinent part, as follows:
“An action for the recovery of land or the possession thereof in the nature of an action in ejectment may be maintained without a statement of any lease or demise to the plaintiff or ouster by a casual or nominal ejector, and the complaint is sufficient if it alleges that the plaintiff was possessed of the premises or has the legal title thereto, properly designating or describing them, and that the defendant entered thereupon and unlawfully withholds and detains the same.”
§ 6-6-280(b). Therefore, to prevail on its motion for a summary judgment, Regions was required to present substantial evidence establishing that it had legal title to the property and that the Pittmans unlawfully remained on the property. Id. See also Turner v. Wells Fargo Bank, N.A., [Ms. 2150320, Sept. 30, 2016] — So.3d -, - (Ala. Civ. App. 2016).
The Pittmans assert numerous grounds that they say demonstrate that Regions did not have legal title to the property; thus, they say, the summary judgment en *196 tered for Regions in its ejectment action was improper. Among other reasons as to why they believe the foreclosure was improper, the Pittmans contend that Regions failed to provide them with proper notice of intent to accelerate the note and with proper notice of intent to foreclose, as required by Section 22 of the- mortgage. The Pittmans also contend that Regions was not a real party in interest because, they say, there was no evidence that Regions was a “holder” of the note. Additionally, they challenge Regions’ refusal to sell the property in separate parcels rather than en masse.
Regions contends that it is not required to provide a “full point-by-point rebuttal” of the Pittmans’ contentions challenging the foreclosure of the property because, it says, the Pittmans waived their right to challenge the foreclosure by not doing so in a timely manner. We agree with Regions that some of the many grounds the Pittmans assert for arguing that the foreclosure was improper cannot be used as defenses in this ejectment action, although not necessarily for the reasons Regions suggests. However, Regions’ argument is not .applicable to all the grounds the Pitt-mans raised in defense of this action.
“Not all irregularities in the foreclosure process, but only those irregularities that would render the foreclosure sale void, may be raised as affirmative defenses to an ejectment action.” Campbell v. Bank of America, N.A., 141 So.3d 492, 499 (Ala. Civ. App. 2012). In Campbell, this court explained:
“An ejectment action following a nonjudicial foreclosure ... is not a ‘foreclosure action,’ and-a defense in such an action asserting errors in the foreclosure process is a collateral attack on a -foreclosure. See Dewberry v. Bank of Standing Rock, 227 Ala. 484, 493, 150 So. 463, 470 (1933) (characterizing the action in Jones v. Hagler, 95 Ala. 529, 10 So. 345 (1891), in which the plaintiff sought possession. of certain property he had purchased from a trustee, who had sold the property pursuant to a power of sale in a deed of trust, and in which the defendant had asserted irregularities in the sale, as ‘a statutory action in the nature of ejectment—an. indirect or collateral attack upon the foreclosure of .real and personal property sold by a trustee, un: der the power [of sale in a deed of trust]’ (some emphasis in original; .some emphasis added)). Accord Pinkert v. Lamb, 215 Ark. 879, 883, 224 S.W.2d 15, 17 (1949) (stating that an ejectment action is a ‘collateral attack by appellees on the ... foreclosure decree.and sale ..., and the burden [is] on them to prove such defects therein as would render the sale and decree void’); Dime Sav. Bank, FSB v. Greene, 2002 PA Super 392, 813 A.2d 893, 895 (2002) (stating that ‘[a]n ejectment action is a proceeding collateral to that under which the land was sold’ and that, ‘where it is claimed that [an] underlying default judgment [in a judicial-foreclosure action] is merely voidable, that claim will not be entertained because such a judgment can not be reached collaterally’).
“In a direct attack on a foreclosure— that is, an action seeking declaratory and injunctive relief to halt the foreclosure sale before it occurs, see, e.g., Ferguson v. Commercial Bank, 578 So.2d 1234 (Ala. 1991); Bank of Red Bay v. King, 482 So.2d 274 (Ala. 1985); and Woods v. SunTrust Bank, 81 So.3d 357 (Ala. Civ. App. 2011), or an action to set aside the sale after it has occurred, see, e.g., Beal Bank, SSB v. Schilleci, 896 So.2d 395 (Ala. 2004); Kelly v. Carmichael, 217 Ala. 534, 536, 117 So. 67, 69 (1928); and Browning v. Palmer, 4 So.3d *197 524 (Ala. Civ. App. 2008)—any circumstance in the foreclosure process that would render the foreclosure sale void or voidable may be asserted. In a proceeding involving a collateral attack on a foreclosure, however, only those circumstances that would render the, foreclosure sale void may be raised as an affirmative defense.”
Campbell, 141 So.3d at 494.
In Campbell, after discussing generally the “types of flaws” that may occur in the foreclosure process, 141 So.3d at 495, this court discussed the circumstances under which a collateral attack of a foreclosure of real property can be used as an affirmative defense in an ejectment action in Alabama. Among the circumstances that .may render a foreclosure sale void, this court noted, were “(1) when the foreclosing entity does not have the legal right to exercise the power of sale, as, for éxample, when that entity is neither the assignee of the-mortgage ... nor the holder of the promissory note ... at the time it commences the foreclosure proceedings,” 141 So.3d at 495, or
“(2) when ‘the debt secured by the mortgage was fully paid prior to foreclosure,’ Lee v. Gaines, 244 Ala. 664, 666, 15 So.2d 330, 331 (1943); (3) when the foreclosing entity failed to give notice of the time and place of the foreclosure sale, Sanders v. Askew, 79 Ala. 433 (1885), but see Kelley Realty Co. v. McDavid, 211 Ala. 575, 577, 100 So. 872, 873-74 (1924) (stating that ‘a distinction must be made between cases where there is no sort of compliance with the requirement of advertisement or other notice of the sale, and cases where there is actually given some notice of the nature required, sufficient to give public information of the pendency and date of the sale, though it be ever so defective or incomplete,’ and that ‘[i]n the latter class of cases the foreclosure sale will not be void, but voidable only to the election of the mortgagor, properly and seasonably asserted’); and (4) when the purchase price paid is 1 “so inadequate as to shock the conscience, it may itself raise a presumption of fraud, trickery, unfairness, or culpable mismanagement, and therefore be sufficient ground for setting the sale aside,” ’ Hayden v. Smith, 216 Ala. 428, 430, 113 So. 293, 295 (1927).”
Campbell, 141 So.3d at 495-96.
In elaborating on the fourth ground, quoted above, for which a foreclosure may be rendered void, the Campbell court explained that in Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Ala. Civ. App. 2010),
“a majority of this court reversed a summary judgment-in favor- of the mortgagee, holding that there was a genuine issue of material fact as to whether ‘the foreclosure sale was invalid on the ground that the price realized at the foreclosure sale was so low in relation to the market value of the property as to shock the conscience, which would constitute an affirmative defense to [the mortgagee’s] ejectment claim,’ 57 So.3d at 149. That holding is consistent with the general principle previously discussed that, if the purchase price is so inadequate as to shock the conscience and raise a presumption of fraud, the inadequacy is a' circumstance that' may render the foreclosure sale void in Alabama. See Hayden v. Smith, [216 Ala. 428, 113 So. 293 (1927) ].”
Campbell, 141 So.3d at 499.
Finally, the Campbell court discussed Hawkins v. LaSalle, Bank N.A., 24 So. 3d 1143 (Ala. Civ. App. 2009), overruled on another ground, Berry v. Deutsche Bank National Trust Co., 57 So.3d 142 (Ala. Civ. App. 2010), and recognized “a line of Alabama cases that appears, to point toward *198 there being a fifth circumstance that will render a foreclosure sale void in Alabama: when an en masse sale injures the mortgagor and violates the mortgagee’s duty of fairness and good faith in executing the power of sale.” Campbell, 141 So.3d at 500. This court then concluded that the holdings in Berry and Hawkins were “consistent with the general principle that irregularities in the foreclosure process that would render the foreclosure sale void may be raised as affirmative defenses to an ejectment action.” Id.
Regions counters by arguing that the affirmative defense of an improper foreclosure is untimely if it is raised more than one year after the foreclosure sale. In support of that proposition, Regions cites Hawkins v. LaSalle Bank, supra. In that case, LaSalle Bank, N.A. (“LaSalle”), sought ejectment of Hawkins from property it had purchased as a result of a foreclosure sale. LaSalle was the holder of the mortgage at the time of the sale. 24 So.3d at 1144-45. LaSalle argued that the summary judgment entered in that case was due to be affirmed because Hawkins had failed to file a counterclaim or to attempt to redeem the subject property within the one-year redemption period set forth in § 6-5-252, Ala. Code 1975. Id. at 1152. As to this issue, this court wrote:
“The trial court rejected that argument, concluding that LaSalle was put on notice less than one year after the foreclosure sale that Hawkins was raising the defense that the foreclosure sale was improper, that Hawkins had amended his answer to specifically plead that defense, and that the amendment related back, pursuant to Rule 15(c), Ala. R. Civ. P., to the date of Hawkins’s original answer, filed on October 18, 2006. We agree with the trial court that that amendment related back to the date of the original answer.”
Id.
In Hawkins, this court rejected La-Salle’s contention that, pursuant to Muller v. Seeds, 919 So.2d 1174 (Ala. 2005), Hawkins could not prevail in LaSalle’s ejectment action against him because he had failed to file a counterclaim challenging the foreclosure sale. This court explained:
“Muller does not stand for the proposition that the invalidity of a foreclosure sale may be raised only in a counterclaim to an ejectment action. Muller merely held that when the invalidity of a foreclosure sale is raised only in a counterclaim, that counterclaim will not be considered a defense to the ejectment action. In this case, Hawkins specifically pleaded the invalidity of the foreclosure sale as a defense to the ejectment action. As such, under Muller, by presenting substantial evidence in support of that defense, Hawkins presented sufficient evidence to defeat LaSalle’s motion for a summary judgment.”
Hawkins, 24 So.3d at 1152-53.
In this ease, the Pittmans did not file a counterclaim or a separate action seeking to have the foreclosure set aside as invalid. However, they have challenged the validity of the foreclosure sale as a defense to Regions’ ejectment action. One of the elements Regions is required to prove to prevail in this action is that it had legal title to the property. See § 6-6-280(b). As a defense to Regions’ action, the Pittmans have asserted that Regions does not have legal title because the foreclosure sale was void. We find no authority to support the contention that such a defense to an ejectment action must be raised within a year of the foreclosure, as Regions argues. If the party seeking the ejectment of the possessor of property does not hold legal title to that property, it *199 cannot prevail in its ejectment action. § 6-6—280(b); see also Turner, — So. 3d at -. Therefore, if the Pittmans presented substantial evidence tending to show that a genuine issue of material fact existed indicating that the foreclosure was void, the summary judgment would be improper.
The Pittmans have challenged the foreclosure on three of the grounds that will render a foreclosure sale void and could, therefore, serve as affirmative defenses to Regions’ ejectment action: (1) that Regions was not the assignee of the mortgage, (2) that Regions’ purchase price of the property was so inadequate as to shock the conscience and raise a presumption of fraud, and (3) that Regions’ sale of the property en masse rather than in discrete parcels injured the Pittmans and violated Regions’ duty of fairness and good faith in executing the power of sale.
In Campbell, supra, this court noted that there is
“a long line of Alabama cases (a) indicating that a sale in parcels or lots is desirable because it ‘ “opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all,” ’ Hawkins, 24 So.3d at 1149 (quoting J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So.2d 831, 843 (1968)), and (b) holding, for the most part, that an en masse sale that causes injury to the mortgagor violates tjie mortgagee’s duty of' fairness and good faith in executing the power of sale and is, therefore, sufficient to invalidate the sale and the foreclosure deed.”
141 So.3d at 499-500.
The rationale for the preference that discrete parcels of property be sold in separate sales rather than en masse was explained in Muller v. Seeds, 975 So.2d 914 (Ala. 2007):
“In Kelly v. Carmichael, 217 Ala. 534, 117 So. 67 (1928), this Court discussed the propriety of a foreclosure sale conducted en masse' when the property foreclosed is capable of being sold in separate parcels:
“ ‘The power of sale in a mortgage is not only a power [coupled] with an interest, but it is quickened with an element of trust, “and the donee of the power is charged as a quasi trustee with the duty of fairness and good faith in its execution, to the end that the mortgagor’s property may be disposed of to his pecuniary advantage in the satisfaction of his debt.”
[[Image here]]
“ ‘The reason of the rule requiring property covered by a mortgage or lien which is in “separate parcels, distinctly marked for separate and distinct enjoyment,” to be first offered for sale in parcels rather than en masse, is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, arid “tends to prevent odious speculation upon the distress of the debtor,” and enables him to redeem some of the property without being compelled to redeem it all.... And this rule applies “where the property covered by the mortgage is separated into several distinct lots, either by natural boundaries, by the way in which it is platted or laid out, or by the fact that the parcels are not contiguous,” (41 C.J. 973, § 1421), and inures to the benefit of a party who has acquired rights in subordination to the mortgage by a conveyance from the debtor (Brock et al. v. Berry, 132 Ala. 95, 31 So. 517, 90 Am.St.Rep. 896 [ (1901) ]).’
*200 “Kelly, 217 Ala. at 537-38, 117 So. at 70-71. The Court elaborated on this rule in J.H. Morris, Inc. v. Indian Hills, Inc., 282 Ala. 443, 455, 212 So.2d 831, 843 (1968):
“‘When the mortgaged land consists of widely separated lots, some of which are dedicated to separate and distinct uses, and are sold by the mortgagee, at one time en masse, and by that means are caused to bring a sum much less than their real value, equity should avoid the sale and let the complainants in to exercise then-equity of redemption. A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in the mortgage, the mortgagee must not disregard the rights of the mortgagor. The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain. When a sale and purchase en masse are had under the power of sale contained in a mortgage, the mortgagor, if the purchaser acquires the property at a sum disproportionate to its real value, may, by seasonable action, have the sale annulled. Dozier v. Farrior, 187 Ala. 181, 65 So. 364 [ (1914) ].’ ”
Muller, 975 So.2d at 918-19.
In this case, it is undisputed that the property comprised six distinct, parcels and that the parcels were sold en masse. Regions’ single foreclosure deed includes each of the separate parcels in the description of the property purchased at the foreclosure sale. The parcels are not contiguous. In opposition to. the summary-judgment motion, the Pittmans submitted Windham’s affidavits, in at least, two of which he testified that 'the six parcels are not contiguous, are not related, and are taxed separately. The Pittmans’ residence is situated on one of the parcels. Windham testified that he made repeated requests of Regions that the parcels be sold separately. He said that he made the requests “because [he] knew that it would be easier to sell the property separately instead of together and that each parcel might fetch a better price individually than if the parcels were sold together.” ’ In one of his affidavits, Windham testified that he also asked Regions to sell the parcels separately
“so that [he] could later potentially redeem just the property with the home and not the other parcels of property which are vacant lots. I knew my ability to redeem just the parcel with the home would be something I could do after the foreclosure sale. However, by selling all of the properties at one sale, [Regions] inhibited my ability to keep the home or redeem it. This prevented me from redeeming the home; as I would have to redeem all of the property since it was all included in one sale. This clearly injured me and my family and hampered my ability to redeem the property where my home is .located.”
Regions did not submit any evidence to the trial court to refute Windham’s testimony.
We conclude that the Pittmans presented substantial evidence indicating that Regions ' refused their request to sell the property in separate parcels and that they were injured when the property was sold en masse. Therefore, there is a genuine issue of material fact as to whether Re *201 gions violated its duty of fairness and good faith in executing the power of sale, which would render the foreclosure void. Campbell, 141 So.3d at 500. Accordingly, the Pittmans have demonstrated that a genuine issue of material fact exists as to whether Regions had lawful title to the property when it sought to eject the Pitt-mans from the property.
Because there was a genuine issue of material fact before the trial court as to the validity of the foreclosure sale, and because voiding of the foreclosure sale would necessarily defeat Regions’ ejectment action, we reverse the trial court’s summary judgment in favor of Regions, and we remand the cause for further proceedings. We pretermit discussion of the other grounds for reversal raised by the Pittmans on appeal,
REVERSED AND REMANDED.
Pittman, Thomas, Moore, and Donaldson, JJ., concur.